GAILLARD REALTY COMPANY, INC., Appellant, *v.* MANHATTAN BRASS COMPANY and Others, Respondents.

First Department, April 7, 1933.

*Walter H. Pollak* of counsel [*Weschler & Kohn*, attorneys], for the appellant.

*Leon R. Jillson*, for the respondents.

SHERMAN, J. Plaintiff is a real estate broker who asserts that it was employed to and did secure a purchaser ready, willing and able to buy defendant's property. When it rested, its complaint was dismissed.

Defendant corporation owned real estate as well as a business which had been announced for sale. They were offered for sale together. Although its charter had expired in 1915, the defendant corporation had thereafter continued in business, one Smith having conducted the business and plant without interference for many years. He had been its president and treasurer and a director to the time of the expiration of its charter and continued to serve as such during the period set forth in the complaint. He as well as his fellow-directors treated the corporation and conducted its affairs as though its charter had not expired. He is sued individually and with the other individual defendants as directors and liquidating trustees of the defendant corporation.

In February, 1926, the board of directors passed a resolution for the immediate liquidation of the business. Smith thereupon asked plaintiff's vice-president, Harnsberger, to find a purchaser for the business and they exchanged letters by which plaintiff was to secure a firm offer without obligation on defendant, except in the event of a sale and in which plaintiff undertook " to bring about a satisfactory sale to you [Smith] and your associates." After introducing several prospective customers, Harnsberger brought one Friedeberg to the factory. Smith then said that he had full authority to accept or reject offers, and discussed the terms with Friedeberg. On the next day Friedeberg returned and brought several associates with him and after they had inspected the plant, they offered to pay for the realty and business the sum of $450,000, all cash. Smith thereupon, after a telephone call, stated that he consulted with his attorney, and had decided to accept the offer. He shook hands with Friedeberg to indicate that the bargain was closed and said " the plant is sold." Friedeberg offered to write out a check for $25,000 to bind the contract, but Smith held it unnecessary. Smith asked them to meet at their attorneys' office on the afternoon of the same day to enter into a formal contract. The several purchasers met Smith accordingly at that office. Contracts had been prepared. The attorney for the Friedeberg group objected because they consisted of two separate agreements, one covering the realty and the other the personal property and he suggested that there should be one agreement. He also objected because the proposed contracts included an item not discussed by the parties nor contained in the correspondence by which plaintiff was engaged to sell the plant and business. That clause required the buyers to assume all liabilities, whether of record or not, up to $25,000. At the suggestion of the attorney for the respondents, the purchaser's attorney then undertook to redictate the contract.

There is evidence that by March nineteenth all of the directors of the defendant corporation had approved in writing the sale to the Friedeberg group, except one, who had telegraphed his consent. Respondents' attorney, Jillson, said that he had every consent but one and he had the approval of that one, having gotten a wire from him as he was so far away that he could not get his signature. The attorneys representing the parties continued to negotiate respecting the two points above mentioned and their treatment in the writing to be signed by the parties. On March twenty-second, accountants having examined the corporate books, the purchasers announced their willingness to assume liabilities up to $25,000 as requested by the sellers, and to sign the two separate contracts with the " ordinary tie-up agreement " on March twenty-

fourth. On March twenty-ninth, Jillson told the purchaser's attorney that he would prepare such a contract and also that Smith had approved the arrangement. A few days thereafter, when informed that the purchaser had heard that other people were negotiating for the plant and business, Jillson said that there would be no sale to any one else. Later, the plaintiff learned that the property had actually been sold to someone else and its attorney spoke to Jillson who said that the purchaser had made the mistake of not hiring Smith to continue the business. Defendants have refused to perfect the sale to Friedeberg and his group, and have declined to pay the plaintiff (the broker) the commission for which it sues.

When plaintiff rested, a motion was made to dismiss the complaint on the ground that there was no proof to bind either the corporation whose charter had expired or the liquidating directors, and on the further ground that if the corporation were treated as a *de facto* corporation, the consent of two-thirds of its shareholders was required.

If Smith be regarded as president of the *de facto* corporation, he, of course, had authority to employ plaintiff to effectuate the sale. Respondents assert that the defendant trustees in liquidation could not delegate the matter of the sale to one of their members. There is, however, no good reason why they might not delegate the negotiations and acceptance of the terms to Smith. (Gen. Corp. Law, § 29.) Under the circumstances set forth in the evidence, Smith's and Jillson's statement that defendants had agreed to the sale was proof of that fact, since both Smith and the attorney were acting for the directors and for the corporation. Indeed, there is no evidence in the record that as a matter of fact these directors had not agreed to the terms of the sale as brought about by the plaintiff pursuant to its employment. Clearly, a *prima facie* case for the jury was made out.

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.